# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SLAWOMIR ZAK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  04 C 839 |
| | ) | |
| RYERSON TULL, INC., a/k/a JOSEPH | ) | |
| T. RYERSON & SON, INC., a Delaware | ) | |
| corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Slawomir Zak's ("Zak") partial motion for summary judgment and on Defendant Ryerson Tull, Inc.'s ("Ryerson") motion for summary judgment.  For the reasons stated below, we grant Ryerson's motion for summary judgment and we deny Zak's partial motion for summary judgment.

## BACKGROUND

Zak alleges that he began working for Ryerson at its Brite Line facility as a line operator in a packaging position in 1987.  Scott Tabler ("Tabler") was the

1

supervisor at that facility. In October of 1998, Zak sustained a work related injury to his feet and lower legs. Zak claims that after he sustained the injury, he was unable to return to the line operator position. Ryerson contends that in August of 1999, Zak returned to temporary light duty work in a clerical position. According to Ryerson, Zak's condition improved and, in November of 2000, Zak's physician released him to return to work as a packager. Ryerson contends that after four days as a packager, Zak indicated that he was unable to perform the job due to his injury. Ryerson states that Zak was thereafter placed on temporary light clerical duty.

Ryerson claims that in February of 2001, Zak's physician provided an updated medical release that indicated that Zak's condition had improved. Ryerson claims that in light of Zak's updated medical release, Zak was returned to his packager position in April of 2001, but Zak again complained that he was unable to perform the job. Ryerson claims that thereafter, Zak was offered a Crane Operator position that would allow Zak to sit while working. Ryerson claims that Zak declined the position.

Zak contends that in February of 2002, Ryerson refused to reassign Zak to a permanent position that Zak could perform given his physical limitations. On February 11, 2002, Zak filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Zak claims that after he filed the EEOC charge, Ryerson retaliated against him by subjecting him to verbal harassment and by refusing to consider him for open positions that he was able to handle, such as

shipping and receiving clerk positions that Zak claims were open in February of 2002. Zak further alleges that Ryerson retaliated against him for filing his EEOC charge by terminating his employment on June 6, 2002. Ryerson claims that Zak's employment was terminated since it no longer had a light duty clerical position available because of conditions in the metals industry that resulted in a series of layoffs at Ryerson. Zak brought the instant action and filed an amended complaint which includes a claim alleging unlawful retaliation in violation of the Americans With Disabilities Act ("ADA"), *et seq.*, based upon a failure to promote (Count I), an ADA retaliation claim based upon Zak's discharge (Count II), and an ADA failure to accommodate claim (Count III).

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by

pointing out "an absence of evidence to support the non-moving party's case."*Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

### I. Failure to Accommodate Claim (Count III)

Ryerson argues the failure to accommodate claim is time-barred and that regardless, Zak has not pointed to sufficient evidence to defeat Ryerson's motion for summary judgment on the failure to accommodate claim.

## A. Time-Barred Claim

Ryerson argues that Zak's failure to accommodate claim is time-barred. A plaintiff is required to bring an ADA claim "within 90 days from the date the EEOC gives notice of the right to sue." *Houston v. Sidley & Austin*, 185 F.3d 837, 838-39 (7th Cir. 1999)(citing 42 U.S.C. § 12117(a), 29 U.S.C. § 626(e), and 42 U.S.C. § 2000e-5(f)(1)). The 90-day limitations period "begins to run when the claimant receives actual notice of her right to sue" although "the actual notice rule does not apply to plaintiffs who fail to receive actual notice through their own fault." *Id.* Zak does not dispute that on April 30, 2002, the EEOC issued a right to sue letter to him. ( R SF 27). Zak filed his original complaint in the instant action on February 3, 2004, in which he only alleged ADA retaliation claims. Zak did not file his amended complaint, which contains the additional reasonable accommodations claim, until August 24, 2004. Zak argues that the only reason that he sought to amend his complaint was because of new evidence of discrimination that he allegedly discovered during the course of discovery. Zak implies that the court somehow agreed with him when it allowed him to amend his complaint, however, such an assumption is utterly unfounded. The court applied the appropriate standard when determining whether Zak should be granted leave to file an amended complaint, but the court made no finding as to whether or not Zak had discovered new evidence. Whether or not any or all of the allegations included in Zak's amended complaint are time-barred or are meritless is a matter that could only be

addressed after leave was given to file the amended complaint, which Zak subsequently filed. Also, to the extent that Zak's failure to accommodate claim did not fall within the scope of an EEOC charge, he would require a right to sue letter in any case before he could proceed. Thus, the failure to accommodate claim (Count III) is time-barred and we grant Ryerson's motion for summary judgment on that claim.

### B. Failure to Accommodate Claim Analysis

Ryerson argues that even if the failure to accommodate claim is not time-barred, Zak cannot defeat the motion for summary judgment on the claim. The Seventh Circuit has made clear that "under the ADA, there are two distinct categories of disability discrimination claims: failure to accommodate and disparate treatment." *Basith v. Cook County*, 241 F.3d 919, 926-28 (7[h] Cir. 2001); *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1032-33 (7[h] Cir. 1999). The ADA provides that an employer cannot discriminate against a qualified individual with a disability by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. . . ." *Basith* , 241 F.3d at 926(quoting 42 U.S.C. § 12112(b)(5)(A)). Unlike the analysis for disparate treatment claims, for the analysis of a reasonable accommodation claim "the burden-shifting method of proof is both unnecessary and inappropriate." *Lenker v. Methodist Hosp.*, 210 F.3d 792, 799 (7[h] Cir. 2000). For a reasonable

6

accommodation claim, a plaintiff must establish that: "1) he was disabled; 2) his employer was aware of his disability; and 3) he was a qualified individual who, with or without reasonable accommodation, could perform the essential functions of the employment position." *Basith* , 241 F.3d at 926.

### 1. Whether Zak was Disabled

Ryerson argues that Zak was not disabled within the context of the ADA. The scope of the ADA does not encompass every physical and mental discomfort or ailment. *See Nawrot v. CPC Intern.*, 277 F.3d 896, 903 (7th Cir. 2002)(stating that "not all plaintiffs with health conditions have a 'disability' within the meaning of the ADA" and that "[t]o claim the protection of the ADA, plaintiffs must come within the coverage of the statutory definition of disability")(quoting in addition*Christian v. St. Anthony Med. Ctr., Inc.,* 117 F.3d 1051, 1053 (7th Cir.1997) for the proposition that "[t]he [ADA] is not a general protection of medically afflicted persons."). The ADA only protects individuals that have an impairment that falls within the meaning of the term "disability" as it is defined in the ADA and interpreted by the courts. 42 U.S.C. §§ 12112(a), 12102(2)(A);*Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 195 (2002).

The term "disability" is defined in the ADA as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual;. . . a record of such an impairment; or. . .being regarded as having such

an impairment." 42 U.S.C. § 12102(2). In order for an individual to have a major life activity that is substantially limited, the impairment must be "permanent or long term" and the "individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg., Kentucky, Inc.,* 534 U.S. at 198. In determining whether an impairment falls within the ADA definition of a disability, the focus must remain on the issue of whether the claimant is "unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with her specific job." *Id.* at 200-01. *See also Mack v. Great Dane Trailers,* 308 F.3d 776, 780 (7th Cir. 2002)(stating that "[a]n impairment that interferes with work-related tasks, however, does not necessarily rise to the level of a disability within the meaning of the ADA."). The courts have not provided an exhaustive list of what tasks are central to most people's daily lives, but the courts have provided some examples. *See Toyota Motor Mfg., Kentucky, Inc.,* 534 U.S. at 195, 201(listing as examples: walking, seeing, hearing, doing household chores, bathing, and brushing teeth);*Mays v. Principi,* 301 F.3d 866, 869 (7th Cir. 2002)(suggesting in Rehabilitation Act case that walking, seeing, reproduction, and the use of an arm would be tasks that are central to most people's daily lives); *Mack,* 380 F.3d at 781(listing as examples: taking care of one's self and lifting a pencil or toothbrush).

In the instant action, Zak concedes to the accuracy of various material facts

8

pursuant to Local Rule 56.1. Pursuant to Local Rule 56.1, when a party files a motion for summary judgment each party must prepare a statement of material facts and each party is required to respond to the opposing party's statement of material facts and either admit or deny each fact. A denial is improper if the denial is not accompanied by specific references to admissible evidence or at least evidence that represents admissible evidence. *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003); *Malec v. Sanford*, 191 F.R.D. 581, 584-85 (N.D. Ill. 2000)(stating in addition that "[t]he purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertions in an organized manner: it is not intended as a forum for factual or legal argument."). Pursuant to Local Rule 56.1, any facts included in a party's statement of facts that are not properly denied by the opposing party are deemed to be admitted. Local Rule 56.1; *Dent*, 2003 WL 22025008, at *1 n.1. *See also Jankovich v. Exelon Corp.*, 2003 WL 260714, at *5 (N.D.Ill. 2003)(indicating that evasive denials that do not directly oppose an assertion are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1). A court is not "obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920, 922 (7th Cir. 1994. Further, the 7th Circuit has held that "a district court is entitled to expect strict compliance with Rule 56.1." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)(stating

in addition that "[s]ubstantial compliance is not strict compliance.").

Pursuant to Local Rule 56.1, Zak admits that he did not use his cane at least part of the time that he worked at the office at the Brite Line facility. ( R SF 34). Zak also does not dispute the fact that "he took public transportation to and from work, walking from his house to the bus, walking as he switched buses," and walking a half block from the bus to the guard booth. ( R SF 35). Zak does not dispute the fact that he took public transportation to "many of his doctor's appointments, to meetings with vocational assistants,. . . and to approximately 40 in-person applications for jobs, walking to and from bus and train stops as needed." ( R SF 37). Zak does not dispute the fact that in 2002 he walked from his house to Morton College two times a week for six months. ( R SF 38). Zak admits that he has recently taken a trip to Poland. ( R SF 42). Zak does not dispute the fact that he "walks to and from a store near his house once or twice daily and is able to walk the aisles at the grocery store." ( R SF 39). Zak does not dispute the fact that, other than assistance with yard work and grocery shopping, he "is able to clean his house, care for himself and do his errands." ( R SF 40). Zak admits that "he continues to take public transportation to his many job search appointments, other appointments and social events." ( R SF 41). Zak also admits that "he does not always use his cane and does not wear special shoes." ( R SF 44). Based upon the above undisputed facts, no reasonable trier of fact could conclude that any of Zak's major life activities were substantially impaired. Thus, no reasonable trier of fact could

find that Zak had a disability within the context of the ADA. Therefore, we grant the motion for summary judgment on the ADA failure to promote claim (Count III) since Zak does not have a physical impairment that is protected by the ADA.

### 2. Whether Zak is Qualified to Perform Essential Functions

To determine whether a plaintiff is a "qualified individual" under the ADA, the court must determine "whether the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc.." *Basith*, 241 F.3d at 927. If the plaintiff satisfies those prerequisites, then the court must determine "whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation.'" *Id.* The "essential functions of a position" are determined by considering factors such as "evidence of the employer's judgment of a position, written job descriptions prepared before advertising or interviewing applicants for the job, the work experience of past incumbents of the job, and the work experience of current incumbents in similar jobs." *Id.* It is undisputed that Zak was returned to his original position at Ryerson after his injury and that Zak indicated thereafter that he was unable to perform the job. Thus, Zak acknowledges that he was not qualified to perform his original packaging position.

### 3. Whether the Requested Accommodations Were Reasonable

Zak claims that Ryerson failed to make reasonable accommodations for him.

Although the ADA requires an employer to make reasonable accommodations, [t]he ADA does not obligate an employer to provide a disabled employee every accommodation on his wish list." *Miranda v. Wisconsin Power & Light Co*, 91 F.3d 1011, 1016-17 (7th Cir. 1996). The ADA requires that the employer make accommodations that are "reasonably possible in the circumstances so as to allow the employee to perform the functions essential to his position," but the employer is not "required to endure undue hardship in accommodating an employee's disability." *Id.* Zak has not pointed to any accommodations that could or should have been made that would have enabled him to perform the essential functions of his position. Instead, Zak's reasonable accommodation argument is essentially that Ryerson should have placed him in another position with tasks that he was capable of performing or Ryerson should have allowed him to remain in his temporary light duty position. Although placing a disabled employee in a vacant position can sometimes be one possible reasonable accommodation, the ADA "does not require that employers convert temporary 'light-duty' jobs into permanent ones." *Malabarba v. Chicago Tribune Co*, 149 F.3d 690, 697-98 (7th Cir. 1998). Zak does not dispute the fact that the light duty position was a temporary position. ( R SF 5, 15, 18, 21). In response to Ryerson's statement of facts, Zak attempts to dispute the fact that the position was temporary by arguing that nothing in the letter provided to Zak indicated that the position was temporary and that Zak was not initially told that the position was temporary. ( R SF 5, 15, 18, 21). However, Zak fails to point to any requirement by Ryerson to include in the letter that the position was temporary

12

and inform him that the position was temporary. Zak's Local Rule 56.1 response in no way contradicts the evidence presented by Ryerson indicating that the position was temporary. Ryerson was not obligated under the ADA to make the temporary light duty position in which Zak worked into a permanent position and therefore such a step was not a reasonable accommodation.

In regards to a possible transfer to another position that Zak was capable of performing, the evidence is clear that Ryerson attempted to place Zak in another position to accommodate his alleged needs. Zak admits pursuant to Local Rule 56.1 that in February of 2002 Brian Kluge ("Kluge") discussed with Zak the possibility of becoming a crane operator. ( R SF 22). Zak would have only needed to climb the ladder to get into the cab. ( R SF 23). Zak attempts to dispute whether or not he declined the position by pointing to testimony of Kluge and Tabler regarding whether or not they recalled if Zak had declined the position. ( R SF 24). Zak also argues that there is not sufficient evidence that a crane position was ever actually available. ( R SF 24). However, Zak is merely sidestepping this issue in his Local Rule 56.1 responses and is attempting to cloud the facts and create disputes where no genuine dispute exists, which is exactly what Local Rule 56.1 is intended to avoid. We need only look at Zak's deposition testimony to illustrate that Zak's contention on this point is meritless. At Zak's deposition, Zak was questioned about the crane operator job and he was asked: "Did Mr. Kluge offer you that job?" (Zak dep.237). Zak responded: "He stated that they have job [sic] of that sort for me." (Zak dep. 237). Zak was then questioned: "And what did you say?" (Zak dep. 237). Zak

responded: "I declined." (Zak dep. 237). When asked what Kluge said in response, Zak answered: " He understood it as a no." (Zak dep. 238) Zak was further asked: "He understood that you turned it down?" (Zak dep. 238). Zak responded: "I do believe. His response was, 'I take that as a no.'" (Zak dep. 238). In addition, Zak's personal diary includes an entry which states that "they have found work that fill my medical [sic] requirements as crane operator sitting in the cab at 16th St." Thus, Zak's equivocations in his Local Rule 56.1 response as to whether he was offered and declined the crane operator position are not sufficient to create a genuinely disputed issue.

In regards to whether Zak could have been transferred to another position, Zak admits pursuant to Local Rule 56.1 that there were job postings for vacant clerical positions at Ryerson and Zak admits that he saw the job postings and did not formally apply for the positions. ( R SF 47, 48). Thus, it is clear that there were available jobs for Zak, but that he did not bother to apply for the jobs. Zak also admits that he believes that there was a job posting for a position titled "shipping and receiving" and that he spoke to Tabler, but Tabler refused to place him in the position. ( R SF 61, 62). However, Ryerson denies that there was any such posting and Zak has no evidence, other than his general recollection, that there was ever such a posting or vacant position. Regardless, Zak admits, pursuant to Local Rule 56.1, that there was never any such posting "and that no one was hired into a shipping and receiving position during the relevant time period." ( R SF 63). This fact is deemed undisputed because, although Zak states in his Local Rule 56.1

14

responses that such a fact is "disputed," his Local Rule 56.1 responses in this regard are not followed by any citations to evidence or the record to support his denial and the facts are thereby deemed admitted. ( R SF 63-65). Zak is not entitled to go before the trier of fact and ask the trier of fact to speculate in his favor in the absence of evidence. Zak also claimed at his deposition that there was a "dispatch" position and a "customer service" position that may have been open. However, Zak admits, pursuant to Local Rule 56.1, that there are no such positions at Ryerson. ( R SF 52, 53, 56). Under the ADA, an employer is not required to move other employees to other positions to make vacancy for an individual "or create new positions. . . ." *Gile v. United Airlines, Inc.*, 213 F.3d 365, 374 (7th Cir. 2000). The ADA obligates "an employer to reassign a disabled employee to a vacant position for which the employee is otherwise qualified." *Id.*; *see also Rehling v. City of Chicago*, 207 F.3d 1009, 1014 (7th Cir. 2000)(stating that although the ADA requires in certain instances that "an employer to reassign a disabled employee to a different position as reasonable accommodation where the employee can no longer perform the essential functions of [his] current position," the employer is only required to "transfer the employee to a position for which the employee is otherwise qualified.").

As indicated above, Ryerson attempted to place Zak in the crane operator position and Zak declined the position. Zak has not pointed to evidence that he was unable to perform the tasks associated with the position. *See id.* (stating that "[i]t is well-established that an employer is obligated to provide a qualified individual with a reasonable accommodation, not the accommodation he would prefer" and that "an

15

employee who requests a transfer cannot dictate the employer's choice of alternative positions."). Ryerson thus attempted to engage in an interactive process with Zak to accommodate him even though, as is indicated above, there is insufficient evidence that Zak is even disabled under the ADA. The evidence is also clear that there were ample opportunities for Zak to apply for a clerical position, that he was aware of such opportunities, and that he chose not to apply. Further, the evidence indicates that Ryerson accommodated Zak by placing him in a temporary position after his injury and Zak has not pointed to any evidence that he was ever told that the position would be permanent. For all of the reasons stated above, we find that there is insufficient evidence for a reasonable trier of fact to find that Zak is disabled, or that Zak was a qualified individual able to perform the essential functions of his job, or that Ryerson failed to provide Zak with a reasonable accommodation. Therefore, we would grant Ryerson's motion for summary judgment on the reasonable accommodation claim (Count III) even if the claim was not time-barred.

## II. ADA Retaliation Claims

Ryerson argues that it is entitled to summary judgment on Zak's ADA retaliation claims (Counts I and II). The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). In order for a plaintiff bringing

an ADA retaliation claim to defeat a motion for summary judgment, the plaintiff must proceed under the direct or indirect method of proof. *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Zak does not have sufficient evidence to proceed under the direct method of proof and will need to proceed under the indirect method. Under the indirect method of proof, a plaintiff bringing an ADA retaliation claim must establish a *prima facie* case by showing that: 1) "after filing the charge only he . . . was subjected to an adverse employment action," 2) , no similarly situated employee who did not file a charge" was subjected to an adverse employment action, and 3) he "was performing his job in a satisfactory manner." *Id.* If the defendant responds with no evidence, then summary judgment should be entered for the plaintiff. *Id.* However, if the defendant is able to point to "unrebutted evidence of a noninvidious reason for the adverse action" the defendant is entitled to summary judgment. *Id.* If summary judgment is granted in favor of neither side in the action then "there must be a trial." *Id.*

### A. Adverse Employment Action

In the instant action, Zak claims that Ryerson retaliated against Zak by not "promot[ing]" Zak to other positions and by allegedly terminating his employment because Zak filed his EEOC charge. For the reasons explained above, Zak has not pointed to sufficient evidence that he was denied any position that he applied for at Ryerson. The facts are undisputed, pursuant to Local Rule 56.1, that Zak did not formally apply for any of the positions that he saw on the job postings. In addition,

17

Zak's general recollection of available positions without further evidentiary support is insufficient to create a genuinely disputed fact. In addition, Zak has admitted, pursuant to Local Rule 56.1, that such postings were never made. Zak made only a vague reference to "openings in positions" in his amended complaint and after discovery he has failed to come up with any further evidence to bolster his vague contention that there were open positions that he was denied an opportunity to be hired for. The evidence clearly shows that Ryerson in fact made an effort to place Zak in a crane operator position and that Ryerson had a system available which posted job openings which informed Zak of open positions.

Zak also argues that his employment was terminated and that the termination is an adverse employment action. However, Zak does not dispute the fact that he was never told that his employment was terminated. ( R SF 50). Zak bases his belief that his employment was terminated on an alleged statement by Tabler to him that there was "no more work for [him]." ( R SF 50). Zak has not come forth with any personnel record or termination letter indicating that his employment was terminated. In yet another attempt to muddy the undisputed facts, Zak disputes, in his Local Rule 56.1 response, the fact that he is on leave and the fact that he believes himself to be on leave. Zak points in his Local Rule 56.1 response to the fact that he stated, initially, at his deposition that he thought that his employment was terminated. ( R SF 51). However, after further questioning at his deposition, Zak admitted that since his last day at Ryerson, he has applied for other positions at Ryerson and has identified himself as "a current employee on leave." (Zak dep.

397). The reason why Zak would tell Ryerson if he was on leave when applying for a position is because of the undisputed fact that current employees at Ryerson that are on leave get preferential treatment for hiring. ( R SF 78). Zak finally was asked: "So is that a fair statement of your understanding of your status, an employee on leave" and Zak responded: "I believe so, yes." (Zak dep. 397). Thus, Zak unsuccessfully attempts to claim that the evidence is disputed in regards to whether he was on leave and whether he believed himself to be on leave. Thus, Zak has failed to point to sufficient evidence for a reasonable trier of fact to find that his employment was terminated. Zak also admits, pursuant to Local Rule 56.1, that in 2001 there was a nationwide reduction in workforce by Ryerson because of economic conditions in the metals industry. ( R SF 30).

Therefore, Zak has failed to point to sufficient evidence that any adverse employment action was taken against him by Ryerson.


### B. Other Retaliation Factors

Zak has also failed to point to sufficient evidence that other similarly situated employees that did not file an EEOC charge were not subject to an adverse employment action. Zak has only vague and unsubstantiated allegations concerning other employees at Ryerson. Finally, as indicated above, Zak does not dispute that there are changing economic conditions in the metals industry or that there was, at one point at least, a reduction in the workforce at Ryerson nationwide. ( R SF 30). Ryerson has presented evidence to support its contention that there were significant

reductions in the workforce at Ryerson during the pertinent period and that Zak was taken off his temporary position because of those reductions. Also, as indicated above, Zak admits pursuant to Local Rule 56.1 that he was working in only a temporary position.

We also note in regards to an ADA discrimination claim, as opposed to an ADA retaliation claim, the Seventh Circuit has established a somewhat adjusted analysis under the indirect method of proof for an ADA failure to promote discrimination claim. *See e.g. Conley v. Village of Bedford Park*, 215 F.3d 703, 711 (7th Cir. 2000). Even if we were to apply the analysis for an ADA failure to promote discrimination claim in the ADA retaliation claim context, which is now before us, Zak still cannot defeat Ryerson's motion for summary judgment. Under such an analysis for an ADA retaliation claim, in order for a plaintiff to defeat a motion for summary judgment utlizing the indirect method of proof, the plaintiff must first establish: "(1) he was disabled within the meaning of the ADA; (2) he applied for and was qualified for the position sought; (3) he was rejected for the position; and (4) those who were promoted had similar or lesser qualifications for the job." *Id.* As explained above, there is not sufficient evidence that shows that Zak is disabled under the ADA. Neither has Zak pointed to sufficient evidence that shows that he applied for the positions sought or was rejected for the positions. In addition, Zak has not pointed to sufficient evidence that other individuals that had similar or lesser qualifications were hired instead of Zak. Therefore, based upon all of the above analysis, we grant Ryerson's motion for summary judgment on the ADA

retaliation claims.

## III. Remaining Claims

Ryerson also seeks summary judgment to the extent that Zak is bringing a claim of verbal harassment based upon Zak's alleged disability and to the extent that Zak is bringing a pattern and practice claim. Zak apparently does not object to summary judgment on that claim because he did not attempt to address any of Ryerson's arguments in this regard. We agree with Ryerson that there is insufficient evidence for a reasonable trier of fact to find in favor of Zak on a verbal harassment claim. *See Silk v. City of Chicago*, 194 F.3d 788, 805 (7th Cir. 1999)(explaining analysis for a harassment claim). We also agree with Ryerson that there is not sufficient evidence for a reasonable trier of fact to find in favor of Zak on an independent pattern and practice claim even if Zak were able to bring such a claim under the law. Therefore, we grant Ryerson's motion for summary judgment on the verbal harassment claim and pattern and practice claim.

## CONCLUSION

Based on the foregoing analysis, we grant Ryerson's motion for summary

judgment in its entirety and we deny Zak's partial motion for summary judgment. All other pending motions are denied as moot.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: April 19, 2005